Oral Article No. 315 is presided by Ms. Rust for the Department of Justice. May it please the Court, I'm Erin Rust, an attorney with the Federal Defender Services of Eastern Tennessee, and I represent the appellant, Mr. Johnny Barbour, in this case. I would ask to reserve three minutes for rebuttal. You may. Please proceed. Mr. Barbour was sentenced at the very top of his guidelines, however, his attorney presented specific arguments and requested a lower sentence. In sentencing Mr. Barbour, the District Court committed three related errors. The first of these errors was a procedural error, which amounts to plain error. That error is that the District Court failed to indicate in the record either that he considered the arguments presented both by Mr. Barbour's counsel and by the government, and the District The second error is a substantive error, being that the District Court relied on an impermissible factor. It's at least possible that the District Court relied on acquitted conduct. You have no evidence whatsoever that he relied upon acquitted conduct. None, right? Your Honor, you're right, there is none. And that relates directly to the first problem, which is that the District Court didn't give any analysis one way or the other, which is the specific concern That doesn't mean he relied on that evidence then. I mean, don't tell us something that's false, counsel. He didn't rely on it. We don't know, Your Honor. Unfortunately, we don't know. Well, you just got through saying he relied on it. So what you're really saying is, not that he relied on it, we don't know whether he relied on it. That's what you're really saying, isn't it? Why would you think that he relied on it? Because the suggestion was made. Because somebody makes an argument or a comment, it was really a stray comment by an AUSA, there's no law whatsoever that says that a district judge has to then respond to everything that one lawyer or the other lawyer said, that you never complete a sentencing. So you can spend as much time on that one as you want, but probably we didn't hear that this morning on these other three errors? So the first one of those deals with, he didn't respond to the argument about overstating the criminal history, right? Correct, Your Honor. Now, let me explain to you why I have trouble with that one, so you can have a chance to respond. Would you agree that there's no question whatsoever that Judge Collier knew about that argument? Judge Collier heard the arguments that were presented before him. But not only heard the arguments, that's why we reversed them the first time based upon this whole argument that he didn't qualify under the armed career criminal because these events all took place at the same time. The specific argument that was presented by his counsel at his resentencing was slightly different. I don't understand how it's different at all to suggest that the judge had a duty to respond to that. He knew that it happened. That's why it got sent back to him to start with. So why does he have to say something about something that was the reason why they were there to begin with? Well, the specific arguments that were dealt with with regards to the armed career criminal act had to do with two alleged robberies that occurred simultaneously at one place. I think that defense counsel's arguments at the resentencing was that when you look at his entire criminal history, not just the incidents that related to the application of the armed career criminal act, but that his entire criminal history occurred in a very narrow period of time. And that the points which were applied based on his full criminal history over represented at the extent of his criminal history. My understanding of the case is that Barber had a gun as a felon in possession and that he used the gun. Yes, your honor. Okay. That's . . . you agree with that? Yes, your honor. He admitted in the plea agreement that he used the gun in self defense. And Judge Collier took that into account? Certainly. It's certainly possible we don't know at the resentencing. He knew about it apparently, right? Yes. Yes. But that's different than relying upon acquitted conduct. He wasn't acquitted of having a gun. He admits that he had a gun. That's how the ammunition came about the discharge shell being found. So the other two things, in addition to criminal history, seem that you say that he should have directly responded to. One is that he was doing well . . . well, you tell me what those other two are. The other two arguments that were presented below are that he was doing well, that his his GED, and apparently he was also working. So he had a job in prison, which is what the prison regulations require him to have. He didn't have a choice about that. Your honor, I . . . the only thing . . . Trust me, you don't get to go to prison and sit in your cell all day. The only thing that I can say to that is I've been working on a lot of the drugs minus two a particular job. But he was also working on his GED, which my understanding is the Bureau of Prisons definitely supports that. But the prosecuting attorney did not indicate that there was anything to undermine his defense counsel's assertion that he had been working successfully towards his GED and had a position. The third thing is that he wanted to be a good parent. Yes, your honor. The third thing was that since he had been sentenced previously by the district court, he served his time in Terre Haute, which was a high maximum security prison where he spent a lot of time alone and able to think about the long-term consequences. And that experience itself was a new experience, which suggests that he was less likely to be a recidivist and which also reduces some of the concerns, which . . . He got what? Eighty-seven months? Eighty-seven months, your honor. Yes. What do you think he should have gotten? Well, his defense attorney asked for a sentence at the bottom of his guideline range. And again . . . And the judge said, well, those guys had a gun, had ammunition, and shot somebody. And I don't think in light of that, we ought to go to the bottom of the guidelines. Your honor . . . But isn't that up to the judge to make that decision? I mean, that's his discretion, at least within that range, isn't it? Your honor, the comments that were made by the judge that you're referencing were made at his initial sentencing. And the arguments that were raised by his attorney at his resentencing had to do with changes in the 3553A factors, which occurred since his prior sentencing. And the only comment that the district court made to support the sentence that he issued at Mr. Barber's resentencing, the 87-month sentence, was to say, obviously, the reasons that I gave at Mr. Barber's prior sentence are the reasons for this sentence. But unfortunately, since none of the arguments that were raised by his defense counsel regarding the 3553A factors and his conduct that had changed since his initial sentencing, those could not have been addressed by the district court's concerns initially. Why is it not very clear here that when he first got 188 months, when the range was 180 to 188, so it's a lot of time, but the reason he got the high end there was this use of a gun. It gets sent back. He still gets the high end, I'll bet, 87 months. It just seems overwhelmingly clear, at least to me, so this is why I want you to explain this to me, why these factors that you say the judge not only had to take into account but also specifically reject with reasons aren't completely overwhelmed by what Judge Barber says, this is a guy whose propensity for violence with a gun overweighed everything else. And had the court said that, Your Honor, had the court said that, I hear, I understand the arguments presented by your attorney on your resentencing, but I reject those arguments. Our case law, I think, says if things are pretty obvious, you don't actually have to say it. So why does this not fit in that category if I'm accurately describing our cases? Your Honor, excuse me, in the Howell case, this court remanded under plan error review because while the district court mentioned the 3553A factors, they did not apply those factors to the defendant in front of them. And additionally, Your Honor, in the Thomas case, this court noted that it is not sufficient, it is not okay for this court to provide reasons when the district court, in fact, gave none. And I suggest that this is not . . . But the district court gave reasons in the first sentence. You can't just ignore what he said the first time around. But the district court did not explain why it rejected the reasons of counsel, of Mr. Barber's defense counsel. Well, he had to say, it doesn't make any difference to me that he's got a job and he's working in prison, and so I'm not going to reduce anything on that account. And he had to come out and say all that? That's what you're saying? Yes, Your Honor. Where do you find that rule? I mean, the district judge has got to have some discretion and also not take forever to get to the sentencing. He's got the case back again. He knows what the facts are on the case, got a pre-sentence report. The guy shot somebody with a gun, and he thinks 87 months is not too much. Well, Your Honor, I think I would direct Your Honor to the Boothington case, and in that case . . . Don't direct me to cases. Answer logically, reasonably, if you don't mind, instead of just referring to cases. Give me your reasons for thinking this is okay. And I'm sorry, Your Honor, for thinking . . . for arguing that we can't look to the prior. You can look anywhere you want to, but when I ask you a question that is based upon reasoning, I would like some reasoning from you as to the answer, not some citation of some case right now. Your Honor, the reasons that we require the district court to directly address the arguments that were presented by counsel and to provide a thorough explanation is twofold. One of those is to explain to the defendant why he received the sentence he did, but it is also to afford this court the ability to fully review and evaluate the reasonableness of the sentence. And in this case, there was a suggestion that was made that Mr. Barber should be held accountable for an intentional attempt to murder as opposed to a self-defense. And it's possible that the court took that suggestion into account. That suggestion was not made at Mr. Barber's initial sentencing. It was only made at his resentencing. The suggestion by the government coupled with the arguments of Mr. Barber's defense counsel, had the court addressed any of the new information that was before it at the resentencing, then this court would have some sort of basis in which to make assumptions as to what the district court was thinking. But because we have absolutely no discussion of the new arguments, both of Mr. Barber's counsel and of the government, which again, the government suggested that he should be held accountable for an intentional attempt to murder as opposed to merely acting in self-defense. Mr. Barber should not, I see that I'm out of time. May I finish? You can finish. Mr. Barber should not have the possibility of serving an unconstitutional sentence because the district court did not provide any reasons. All right. Thank you. You'll have your rebuttal. Mr. McLaurin, you've got to admit, our life would be a lot simpler if the district judge has just said more. Absolutely, Your Honor. Now, we've got a bunch of cases that say, what they said, which is not much, is enough. And we've got a bunch of other cases that say, when they didn't say much, it's not enough. Your Honor, I think the best way to resolve this case, there are really, I think, two key cases, both binding on this court, that should look to resolve this case. The first is Rita, which is clearly binding a Supreme Court decision. And the second is Vonner, which is an en banc decision from this court. And I would point out that what Vonner said, I think, applies perfectly to this case. This was not an ideal sentencing explanation. I'm not going to say that this was a textbook ideal sentencing explanation. It wasn't. The district judge could have said more. And I agree, it would have been better if he had said more. But the question that this court faces is, was what the district court did in this case so plainly erroneous, because we are dealing with a plain error standard, that it's reversible error? And the answer to that question is no. Because if you look at Rita. Would you agree that if this was not a resentencing, if all he had said is what he did say, and this was an initial sentencing, probably is not enough? Probably not. But it's hard to answer that hypothetical, because part of what he said was to incorporate by reference his reasons from the prior sentencing. That's why we call it hypothetical. Yes. But they don't address the intervening arguments. So by definition, if he didn't say it at the sentencing, and it wasn't raised at the other sentencing, it wasn't addressed. And these are not frivolous arguments. Chances are, he's going to give the exact same sentence, and there's nothing wrong with the sentence. But there's a rule that you have to address non-frivolous arguments, otherwise we can't review.  That's not what the Supreme Court has said. What the Supreme Court has said is very clear. That said, this is from Rita. They said that we cannot read the statute, they're referring to the statute that requires the court to state its reasons, as insisting upon a full opinion in every case. The appropriate of brevity or length, conciseness or detail, when to write, what to say, depends on the circumstances. Sometimes a judicial opinion responds to every argument. Sometimes it does not. And in that very case, Rita dealt with a situation almost identical to this. A defendant had made some sort of mitigation arguments at sentencing. And the sentencing judge there said, you know, he listened to the arguments and said, well, I think the guideline sentence is appropriate. And that's all he said. He didn't respond to the specific mitigating arguments that were made. And yet the Supreme Court said that was sufficient. The Supreme Court said, we acknowledge that the judge might have said more. He might have added explicitly that he had heard and considered the evidence an argument. That as no one before him denied, he thought the commission and the guidelines had determined that the sentence was proper in the mind run of roughly similar perjury cases. And that he found Rita's personal circumstances here were simply not different enough to warrant a different sentence. But the context in the record made clear that this or similar reasoning underlies the district court's conclusion. And that's what's going on in this case. The defendant made relatively straightforward mitigation arguments at sentencing. And Judge Collier clearly listened to those arguments. He asked the assistant United States attorney about factual basis for supporting one of those arguments. And at the end of the day, his sentencing explanation doesn't explain, he doesn't explicitly say, yeah, I think all of your arguments are bogus. He just says, you know what, I'm going to impose a top of the guideline sentence and the reasons I'm doing so are the same reasons I outlined at the previous sentencing hearing. And those reasons are responsive to why defendants mitigating arguments don't make sense. The reasons... So the question then becomes whether that's an explicit, excuse me, an implicit rejection of the arguments. It is. It is an implicit rejection. Because the judge, for whatever reason, didn't find them to be, to have any weight. Exactly. And that's what both Rita and also Vonner says a district court can do. Now we're not suggesting that that is ideal sentencing practice. It's not. Ideal sentencing practice would be to make sure that every defendant understands the very exact reasons why the district court didn't find their arguments persuasive. But the question is, is it sufficient? And particularly in this case, was it plainly erroneous? Was it so... Usually we require some acknowledgment that there's reason to believe the judge heard and understood the argument. And when someone says, I'm going to give you this sentence for all the reasons I said before, one wonders whether there was a consciousness that there were new arguments being made. Well, Your Honor, I think that we can infer the consciousness from the fact that the judge patiently listens to the arguments. After the parties have presented the arguments, the judge, Judge Collier, actually asks the government, he says, well, do you have any information about his behavior in prison, which is directly relevant to one of the arguments? So he was clearly listening to what was going on. He was trying to make an evaluation. He just, at the end of the day, found the defendants' mitigation arguments unpersuasive and reasonably so. As Judge Barrett and Judge McKee pointed out, and as Judge Collier pointed out by referencing his discussion at the first sentencing hearing, Johnny Barber was an individual who had been involved in multiple shootings. And in this case, he had been involved in a shooting. He was simply a dangerous individual. The kind of individual for whom Judge Collier reasonably believed a top-of-the-guideline sentence was appropriate. And all of those concerns about violence outweighed the mitigating concerns the defendant had presented. And Judge Collier reasonably and consistently with Rita, consistently with Bonner, felt that, you know what, these are such simple arguments that not much of an explanation is required to dispose of them. I don't find them persuasive. We've already talked about this case at length. Everybody at the sentencing proceeding was clearly familiar with the case. They've been through the previous sentencing. Would it have been better for Judge Collier to provide a more extensive explanation? Absolutely. Were you the AUSA at the sentencing? No, I was not. So what about the argument that your colleague somehow led Judge Collier astray by suggesting that he should hold him responsible for acquitted conduct, which the acquitted conduct was not just that he had a gun and it went off. It's that he, what, he murdered somebody. First of all, I think that's factually and legally incorrect. It's factually incorrect in the sense that the AUSA never actually suggested that. If you look carefully at the transcript, and I'm referring to page ID 221. This is the second sentencing transcript. The assistant United States attorney acknowledged, said, look, the jury did rule out, ruled that this was self-defense, but he wanted the court to focus on the fact that even if it was self-defense Mr. Barber had been carrying a gun with him the whole time he was out, which made his conduct create a situation where there was a potential for violence. Even if he had been acting in self-defense, the mere fact that he was carrying a gun around in a situation where there might be arguments, where there might be these kind of interactions, was the kind of behavior that suggested that a higher sentence was warranted. The AUSA didn't explicitly say, look, you should sentence this guy higher because he's a first-degree murderer. He didn't say that. He actually explicitly acknowledged that the jury had acquitted him. But I would point out, even if the government had argued for consideration of that acquitted conduct, that is absolutely permissible under this court's case law. This court's en banc decision, United States v. White, says that a sentencing court can consider acquitted conduct at sentencing. Our position is that there was no acquitted conduct that was considered here at sentencing, but if the court had, that would certainly have been permissible. It would have been constitutional, and there would have been no problems with the court doing so. But the court didn't do so because the government didn't ask it to do so. But I think the cases do say that if you're going to do that, you have to explain why you did it. Yes. If you do rely on acquitted conduct, I mean, but the court would have to explain why it found that that acquitted conduct was established by a preponderance of the evidence. But again, here, there's nothing in the record at all to suggest that Judge Collier or the I can't really say harmless error on this other argument because the judge failed to then explain why, although the evidence didn't amount to beyond a reasonable doubt, it did meet a preponderance standard. So you can't win on that. Well, I think we could win as to the preponderance. I think the judge could have found by preponderance of the evidence that there had been, that Mr. Barber had committed a first-degree murder. But the point is, you wouldn't get to any error analysis because the district court didn't actually rely on that. The only facts that the district court was asked to consider was the fact that he shot somebody. The district court was not asked to consider the fact that he was a murderer. The court was asked to consider the fact that he was carrying a gun and shot somebody. Those were undisputed facts if you look at the defendant's plea agreement. The very first line of the factual basis says, on such and such a date, defendant shot Michael Kilgore. He admits that he shot him. The only question was whether that was legally self-defense or whether it was murder. And the jury found one way. And neither Judge Collier nor the AUSA who handled this case encouraged a sentencing based on a different rationale. They just encouraged the court to consider the fact that the unlawful possession of a firearm in this case occurred in the context of a shooting, which I think, as Judge Merritt and Judge McKeague have pointed out, does make this to seem like a more egregious case. It's not your typical run-of-the-mill felon in possession of a firearm case. This is a situation where a felon's possession of a firearm is particularly dangerous because it resulted in a shooting. So we think that that particular argument just is completely lax, Merritt, both in terms of the factual basis for it, but again, we would submit that there would be, there would have been sufficient evidence for the district court to have found by a preponderance of the evidence based upon the description that's in the plea agreement and in the PSR. Unless there are other further questions, we believe that this sentence should be upheld. No, I don't have any. All right. Thank you. Thank you. Ms. Rust? Your Honors, the prosecuting attorney is asking you to make an assumption, to implicitly recognize that the district court rejected the arguments presented by Mr. Barber, but at the same time implicitly assume that the district court did not take into account the suggestion that Mr. Barber attempted to murder somebody instead of acting in self-defense. And I would suggest that had the court provided any explanation, if that explanation was limited to why it rejected the defense counsel's arguments, but in no way suggested that it relied on that, that would be sufficient evidence in the record to assume that the district court did not take into consideration any acquitted conduct because there would be information in the record indicating what the district court did consider. Here Your Honor- You understand now that the government's response to this is going back to what the AUSA actually said. He didn't ask the judge to take acquitted conduct into account. He said- That's the government's argument. Yes, I understand that's the government argument. Now- The government's argument. The statement the AUSA made is, so the jury did rule it was self-defense, but Mr. Barber had been out to the club with these people, he'd been carrying this gun the whole time before he ended up shooting these people. He's already received quite a gift on his sentencing, Judge. Where in those words is there even the implication that the judge should find that the self-defense determination from the jury was not right? Well, Your Honor, the prosecuting attorney states, so the jury did rule that it was self-defense, but- and then he moves on to explain, oh, Mr. Barber had been with these guys- You have to read what's after the but. He'd been out- The but said, but Mr. Barber had been out to the club with these people, meaning he was prohibited from having a gun, he'd been at the club and had a gun the whole night, which is the essence of the crime here. And he goes on to say, Mr. Barber has received quite a gift on his sentencing already. And had the district court provided- That's from the ACC reversal, right? Well, Your Honor, it follows immediately after. It's hard to tell. And Your Honors, had the district court provided an explanation for its sentence, we would know how he interpreted the statements of the prosecuting attorney. But he didn't provide an explanation of why he accepted or rejected the arguments presented at the resentencing. And therefore, that makes difficult this court's ability to analyze the substantive reasonableness of his sentence. I would also suggest that this court's precedent draws a clear line in the sand between not providing any analysis at all and evaluating whether or not the district court provided sufficient analysis. You failed to take into account this was a resentencing where this court had reversed the case, but not on any grounds used previously except the one. And so, it's not quite the same as if you had a brand new case, all kind of arguments were made, because that's not the fact. The fact is this is a resentencing, and he says, look, this is what I did before, this is what I'm going to do now, and I'm basically going to do that for the reasons that I've already explained in my earlier case. Now, I don't see that anything's wrong with that, unless you've got to also take into account that when you get up on appeal, the appellate judges also have some instincts about what's a fair sentence. And if they think the sentence is unfair, they're going to be tougher than they do, they will be, if they think the sentence is in the ballpark and it's fair. And I don't see anything wrong with this sentence, so I'm not inclined, therefore, to find a lot of fault with it. You follow me? And that's what you've got when you come up here on appeal, normally. I see I'm out of time. Yeah. You certainly can respond if you'd like. I do recognize, Your Honor, that this is different than a normal situation, because there were reasons provided at the initial sentencing. And what I would suggest is that there's existing case law in this circuit where a district court provides similar analysis to what was provided at the initial sentencing, all in single sentencing, but at the same time fails to address arguments that were presented by defense counsel. And this court has previously remanded that as a failure to explain the district court sentence. I believe that's the Boothington case and perhaps the Thomas case. Thank you, Your Honor. All right. Thank you. Case will be submitted. That completes the oral arguments. You may please adjourn the court.